In the Matter of the Petition of REUBEN J. STRAUSS, Petitioner, for an Order under Civil Practice Act, Article 78, against WILLIAM A. HANNIG and Others, as Members of the Board of Examiners of the Board of Education of the City of New York, to Compel the Performance of a Duty Specifically Enjoined by Law, Respondents.*

Supreme Court, Trial Term, New York County, December 1, 1938.

* Revd., 256 App. Div. 662.

*G. D. Friou,* for the petitioner.

*William C. Chanler, Corporation Counsel* [*A. B. Hoff* of counsel], for the respondents.

HOFSTADTER, J. This is a proceeding under article 78 of the Civil Practice Act. The Special Term of this court has heretofore directed trial of the following issue of fact: " Whether the action of the Board of Examiners of the Board of Education of the City of York in denying a license to petitioner was arbitrary, capricious and unreasonable."

It was at first suggested by the corporation counsel that if the board of examiners acted on the advice of their medical representatives, it could not be said that the action of the board was arbitrary, capricious and unreasonable. But a hypothetical case being pressed upon counsel's attention, such as where a medical report to the board makes a diagnosis which is a palpable and demonstrable error, he acceded to the suggestion that the question was essentially one of degree. If the *conclusion* of the board of examiners is clearly unreasonable, however appropriate their *method* of approach and of appraisal of medical fitness, and notwithstanding a slight measure of factual basis, it is necessarily subject to review by the courts.

In brief, if in fact its conclusion is clearly unreasonable, its action may be deemed to be arbitrary, legally speaking, and subject to revision and correction here. (*Matter of Hodgins* v. *Bingham,* 196 N. Y. 123; *Sloat* v. *Board of Examiners,* 274 id. 367.) Otherwise, grave injustice would prevail.

I have gone to some pains to articulate the problem as I see it here, because in approaching it I have had in view the guiding rule to the effect that ordinarily " mandamus will lie against an administrative officer only to compel him to perform a legal duty, and not to direct how he shall perform that duty when the manner of performance is in his discretion." (*People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92.) However, the general principle is not a valid

objection to the use of that remedy. There is a limit to the exercise of discretion by an administrative officer which may be controlled by the courts. (*Matter of Baird* v. *Board of Supervisors of Kings County*, 138 N. Y. 95; *De Lorme* v. *Altman*, N. Y. L. J. Sept. 26, 1935, p. 960.)

Anxious study of the present record persuades me that the board of examiners erred palpably. The petitioner has taught in the schools for many years. His record of service in the schools, as well as his occupational history preceding it, are utterly barren of any suggestion of impairment of efficiency. On the contrary, his history and record up to this very time suggest unusual energy, industry and effectiveness. His extra-vocational activities (as well as his extra-curricular activities in school) emphasize his full capacity to carry on normally. In cardiac cases history and subjective manifestations are regarded as important perhaps as clinical findings in establishing a prognosis. This may be understood readily when medical experts advise us that to start with normal cardiac capacity far exceeds normal functional requirements; and that in recent years an altogether optimistic view of cardiac involvement has been taken by competent cardiologists. Optimism has become not only a method of therapy but the basis for prognosis as well. (See articles by Dr. Arthur A. Masters, eminent cardiologist, entitled " Optimism in Heart Disease," *Hygeia*, July, 1938, and " The Hopeful Side of Heart Disease," *Better Times*, March 4, 1936.)

Upon the whole record I am clear that there was no reasonable basis for apprehension regarding petitioner's medical fitness and that the conclusion of the board of examiners was arbitrary and capricious. It would be a refinement of cruelty, as well as scientifically unwarranted, to deny the petitioner an opportunity to follow his chosen profession, to qualify himself for which he has made inordinate sacrifices and in which he has already served many years, and in which he has manifested concededly a standard of unusual excellence.

The question is answered in the affirmative.